# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| W.S. INTERNATIONAL, LLC, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| vs. | : | NO. 11-3014 |
| | : | |
| M. SIMON ZOOK COMPANY, | : | |
| d/b/a The Zook Molasses Company, | : | |
| et al., | : | |
|     Defendants | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                                                                          May 12, 2011

In this diversity action, the plaintiff brings a state law conversion claim against the defendants based on the defendants' continued possession of a piece of machinery which the plaintiff purchased and installed at the defendants' Leola, Pennsylvania facility. Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, the plaintiff filed a Motion for a Temporary Restraining Order enjoining the defendants from interfering with the plaintiff's right and ability to access, retrieve, and remove its equipment immediately. The plaintiff filed a supplemental memorandum of law in support of its motion. A hearing on the motion was conducted on Monday, May 9, 2011 with counsel from both sides present. The defendants filed a verified response in opposition to the plaintiff's motion, to which the plaintiff has responded. For the following reasons, I will grant the motion, and order that the defendants grant the plaintiff access to the plaintiff's equipment currently held at the defendant's Leola facility in order to transfer the equipment.

## I. BACKGROUND

The facts are taken from the plaintiff's complaint. There is general agreement as to the contractual relationship between the parties and the installation of the equipment. There seems to be agreement about the deterioration of the relationship between the parties, and the court assumes that each side has a "take" on the post-contract developments. There is no real dispute, however, over the essential fact of the case at this stage: the plaintiff purchased, financed, and owns the machine in question.

The plaintiff is WS International, an Illinois limited liability company that produces and distributes food products to bakeries and related businesses. Defendant M. Simon Zook Company, doing business as the Zook Molasses Company, is based in Honey Brook, Pennsylvania. Defendant Good Food, Inc., does business as L&S Sweeteners which is based in Leola, Pennsylvania, and owned by Good Food, Inc., and M. Simon Zook Company. The defendants are in the business of blending, storing, transporting, and selling sweeteners used in the production of many food products.

In 2009, the parties entered into a business relationship whereby the plaintiff agreed to purchase its sugar from the defendants, and the defendants agreed to produce and distribute all of the plaintiff's fondant[1] product line in and from their Leola facility. In June 2009, the plaintiff purchased a 3300 pound-per-hour fondant machine for $350,000 which was installed at the facility to be used solely for the production of the

---

[1] Fondant is defined as a soft, creamy preparation of sugar, water, and flavorings that is used as a basis for candies or icings. Merriam-Webster's Collegiate Dictionary, 11th Ed. (2003).

plaintiff's highly sought after fondant. The plaintiff financed a portion of the cost and as a result the machinery is subject to a lien held by a bank in Illinois.

The complaint alleges that due to their negligence, the defendants were unable to install the machinery on time which led to a six-month delay in getting the equipment ready for the plaintiff's fondant production. During that delay, the plaintiff had to pay a higher price for the production of its fondant at another company in Illinois.

Eventually, the machinery in Leola started to produce some level of fondant. The level, however, was insufficient and inconsistent with the parties' agreement. The amount of production to which the parties agreed was 3,000 pounds of fondant every hour. The defendants were only able to produce between 500 and 2,000 pounds per hour. The plaintiff claims to have had to reject some of the fondant production as unfit for delivery. Because of these deficiencies, the plaintiff struggled to fill its customers' orders, and its ability to sell its product suffered.

After receiving customer complaints, the plaintiff investigated and determined that the defendants' production of fondant was not done in accordance with the plaintiff's specifications. The plaintiff shared this information with the defendants and demanded an immediate remedy of the problems including the implementation of enhanced testing of the fondant. The complaint alleges that the defendants have refused to implement the necessary practices to fix the problems.

The plaintiff's customers have been threatening to take their business elsewhere if the plaintiff cannot fill the orders and deliver the high quality of product the customers were accustomed to receive from the plaintiff. One of the plaintiff's largest customers

gave it a finite extension of time in which to begin producing a sufficient amount of fondant. Failure to perform would jeopardize the plaintiff's relationship with that customer, cause incalculable lost revenues and profits to the plaintiff, and undermine the plaintiff's morale and organizational stability. The plaintiff realized that it was time to search for another partner to produce and distribute its fondant line.

To that end, the plaintiff entered into an agreement with Royal Sugar Company to produce and distribute its fondant from Royal's facility in Swedesboro, New Jersey. In order for Royal to begin to produce the fondant, it is imperative that the plaintiff's machinery be transferred to and installed at Royal's facility. The plaintiff insists that time is of the essence for it to transfer that equipment so it can continue the production of fondant with as little interruption and delay in business as possible.

On April 29, 2011, the plaintiff's attorney notified the defendants of the plaintiff's intention to remove the machinery from the Leola facility. Defense counsel responded that the plaintiff could get its equipment on May 3, 2011 provided it scheduled the move with the facility's personnel. The defendants also demanded proof of insurance for the entity that was to remove the equipment. Defense counsel added that payment of all past due balances, i.e., approximately $600,000, would need to be made by the plaintiff upon removal of the equipment.

The plaintiff's counsel responded that it would get the equipment on May 3 and that it would provide proof of insurance. He added, however, that the plaintiff would not pay the requested sum as it was a disputed claim between the parties. Because of some scheduling difficulties, the move was postponed to Thursday, May 5. However, at 4:18

p.m. on Wednesday, May 4, newly-retained defense counsel informed plaintiff's counsel that the defendants were refusing to permit the plaintiff access to the equipment until the plaintiff paid $659,371.19, in past due balances. Counsel also informed the plaintiff that the defendants were asserting an equitable lien and a retaining lien on all of the plaintiff's machinery currently located at the defendants' facility.

In its response to the plaintiff's motion, the defendants indicated that, despite the promise of a new machine, the plaintiff arranged for a "cannibalized, 36-year-old non-working fondant wheel" to be delivered to the Leola facility. The plaintiff asked the defendants to "repair, install, and modify the machine, as necessary to make it work." The plaintiff agreed, according to the defendants, that the defendants "would, in exchange, retain possession of the equipment *until* expiration or termination of the relationship." (Emphasis added). The defendants repaired and modified the machine at great expense so the production of the fondant could begin. The machine was "fundamentally rebuilt and modified at the request of Plaintiff." In fact, the defendants claim that the cost of the modifications, repairs, and installation of the machine was at least $136,232.

As justification for retaining the equipment, the defendants now argue that they "have a valid possessory lien on the fondant wheel." In Pennsylvania, "a common law lien permits one who adds to the value of another person's chattel by labor, skill or material, at the other's request, to retain the chattel until he or she is paid for the value of the services rendered." Aircraft Repair Services v. Stambaugh's Air Service, Inc., 175 F.3d 314, 318 (3d Cir. 1999). Additionally, the defendants claim that "the machine as it

5

stands today is nothing like the batch of non-working, hodgepodge of components originally received by Defendants." It would be impossible, they contend, to turnover to the plaintiff the "so-called 'equipment' originally received, since through Defendants' dedicated efforts, as requested and directed by Plaintiff, the equipment has been turned into something it never was, namely a working fondant wheel now capable of producing superior quality fondant consistent with the impeccable reputation and business practices of the defendants."

Finally, the defendants disagree with the plaintiff's choice of action brought to recover its property, and suggest that it would have been more proper for the plaintiff to have brought a replevin action. They argue that because they have asserted "a possessory lien and the actual owner wishes to obtain possession of the chattel at issue," the plaintiff had two choices: (1) satisfy the lien and sue for return of the alleged overcharge; or (2) bring an action for replevin and then request a writ of seizure. Id. at 318-319. This would have also required the plaintiff to post a bond for double the value of the property averred in the complaint. Id.

While I agree with the defendants that a replevin action would have been a valid alternative, it was not the choice of the plaintiff. The action brought by the plaintiff is just as valid. Further, the plaintiff was unaware that the defendants would assert a possessory lien[2] on the equipment until the defendants' written response to the plaintiff's

---

[2] At the hearing, defense counsel stated that the defendants had an "equitable lien" on the property. To establish an equitable lien, the party asserting the lien must show that there was an obligation owing by one person to another, a res to which that obligation attached, and an intent by all parties that the property serve as security for the payment of the obligation. Kern v. Kern, 892 A.2d 1, 8 (Pa. Super. 2006). The plaintiff correctly points out that the parties never agreed or contracted that the equipment would serve as security for any payment obligation. The parties'

6

motion. There was no mention of a lien in any of the correspondence between the parties before the filing of the plaintiff's complaint. Accordingly, it would have been impossible for the plaintiff to anticipate the defendants' assertion of a lien.

Nevertheless, the lien asserted by the defendants is inapplicable here. The possessory lien discussed by the Third Circuit in <u>Aircraft Repair Services</u>, cited by the defendants, is also known as a repairman's lien or a mechanic's lien which entitles a repairman in Pennsylvania to retain possession of a good pending payment of repair charges. <u>Id.</u> at 316. There, the plaintiff owned an aircraft which had been kept in storage at the defendant's facility. <u>Id.</u> at 317. After an extended period of time in storage, the plaintiff asked the defendant to inspect and repair the aircraft. At the completion of four months of work, the defendant submitted an invoice for $444,861.58. The plaintiff requested a credit of $151,437.56, claiming that the defendant had performed some unauthorized work. The defendant refused the credit which led to the plaintiff's refusal to pay the invoice. The defendant then asserted a possessory lien over the aircraft to enforce payment of the repair charges. <u>Id.</u>

Such was not the case here. The parties entered into an agreement which the defendants have acknowledged was quite a lucrative business opportunity for both sides. The defendants agreed to produce the plaintiff's entire fondant line on a machine provided by the plaintiff. From late 2009 until approximately October 2010, the plaintiff ordered and paid the defendants over $1.8 million for product. From October 2010 until

---

agreement did not offer the machinery to serve as collateral for any disputed claims. The plaintiff owns the equipment and the defendants have no right to claim an equitable interest or lien in it. Further, the alleged financial obligations owed by the plaintiff are not attached to the equipment in question. Accordingly, the defendants' assertion of an equitable lien in the equipment has no merit.

7

April 29, 2011, the plaintiff ordered approximately $1.2 million of product, over half of which remains unpaid. The unpaid portion of payment, however, is a separate claim which the defendants have the right to attempt to recover legally, but not by the assertion of a possessory lien under these circumstances.

## II. LEGAL STANDARD

The federal standard for granting a preliminary injunction is the same whether the court is applying state law in a diversity case or exercising federal question jurisdiction. See Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 799 (3d Cir. 1989). A decision to grant or deny a preliminary injunction is within the sound discretion of the district court." Spartacus, Inc. v. Borough of McKees Rocks, 694 F.2d 947, 949 (3d Cir. 1982). However, the Third Circuit has repeatedly held that a preliminary injunction is an "extraordinary remedy" that "should be granted only in limited circumstances." Kos Pharm. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004).

In determining whether a preliminary injunction should be granted, a district court must consider four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant would be irreparably injured by denial of the relief; (3) whether granting preliminary relief would result in even greater harm to the non-moving party; and (4) whether granting preliminary relief would be in the public interest. Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994); ACLU v. New Jersey v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n.2 (3d Cir. 1996). The plaintiff bears the burden of showing that these factors weigh in favor of granting the injunction. Kos Pharm. Inc., 369 F.3d at 708. "Only if the movant produces evidence

sufficient to convince the [court] that all four factors favor preliminary relief should the injunction issue." Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990).

**III. DISCUSSION**

### A. Likelihood of Success on the Merits

The plaintiff's complaint pleads causes of action for conversion and declaratory and injunctive relief. Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification. The plaintiff purchased and delivered the equipment to the defendants' facility for the express purpose of being utilized to produce the plaintiff's fondant. The defendants never owned or had any right or interest in the equipment. The parties' agreement did not provide that the equipment would serve as security for any claim or dispute which might arise among the parties. The equipment provided the means for the defendants to acquire large amounts of revenue from the plaintiff. Accordingly, the plaintiff has satisfied its burden of demonstrating a likelihood of success on the merits for its claim for conversion against the defendants.

### B. Irreparable Harm

An irreparable harm is a harm which cannot be redressed by a legal or an equitable remedy following a trial. Loss of control of reputation, loss of trade, and loss of good will constitute irreparable harm. Here, the plaintiff insists that if it is not granted immediate and unfettered access to its equipment at the Leola facility, it will suffer "incalculable losses with respect to lost profits, lost referrals to new customers, lost

9

credibility, damage to reputation, and organizational instability." There is no other production facility where the plaintiff could manufacture the fondant at this time. Furthermore, the plaintiff does not have the financial ability to purchase replacement equipment for installation at the Swedesboro facility. Even if it did have those resources, it would take months to get new equipment up and running.

The plaintiff transferred responsibility for the production and distribution of its fondant line to the defendants. It has contracts with customers under which it is obligated to produce and deliver significant amounts of fondant. The plaintiff insists that as a result of the defendants' inability to produce the fondant as promised, the plaintiff continues to suffer serious and irreparable harm to its business reputation, and it risks losing customers and business opportunities which are not likely to be recaptured. The plaintiff's customers have threatened to seek another producer of fondant if the plaintiff cannot fill the orders and deliver the high quality of product the customers were accustomed to receive from the plaintiff. Failure to fulfill its obligations would jeopardize the plaintiff's relationship with its customers.

The plaintiff located an alternative means by which to produce and distribute its fondant product line, but that cannot occur without the equipment currently held at the Leola facility. The plaintiff cannot afford to replace the equipment. If the defendants do not grant the plaintiff access to its equipment, the plaintiff will be unable to fulfill its obligations, and will suffer incalculable losses with respect to lost profits, lost referrals to new customers, lost credibility, damage to reputation, and organizational instability. Accordingly, this factor also weighs in favor of the plaintiff.

### C. More Harm to Plaintiff than to Defendants

I agree with the plaintiff that the balancing of the harm to the parties favors the granting of the Temporary Restraining Order. If this relief is granted, no harm will result to the defendants. First, the defendants have no right to keep the equipment. The plaintiff purchased the equipment and installed it at the defendants' facility for the sole purpose of producing the plaintiff's entire fondant line. Over many months, that relationship proved lucrative for the defendants. Because of failure to pay certain invoices, the defendants refused the plaintiff access to the equipment to arrange for its transfer.

Second, at the hearing, defense counsel indicated that the plaintiff's equipment was idle and secured at the Leola facility. It provides no benefit to the defendants. Thus, the defendants will suffer no harm should they permit the plaintiff access to its equipment in order to transfer it to Swedesboro, New Jersey.

On the other hand, the plaintiff will suffer a great deal of harm should it be precluded from the use of its equipment for the continued production of its fondant line. The plaintiff's business depends on providing its customers with a certain level of product in a certain time frame. The plaintiff is also in danger of losing one of its largest customers who has demanded that the plaintiff begin producing a sufficient amount of fondant. Accordingly, this factor also weighs in favor of granting the plaintiff's motion.

### D. Public Interest

Finally, the public interest is best served when property rights are settled. The public has a strong interest in seeing that property rights are respected. <u>Ride the Ducks of</u>

Philadelphia, LLC v. Duck Boat Tours, Inc., 138 Fed.Appx. 431, 434-435 (3d Cir. 2005). Here, the plaintiff bought the equipment. The defendant has no interest in that equipment. Accordingly, it is in the best interest of the public that the property be returned to its rightful owner.

In conclusion, the analysis here turns on the issue of ownership of the equipment. The plaintiff has exceeded its burden of proving a likelihood of success on the merits of its conversion claim. The defendants have deprived the plaintiff of its right in the equipment, an intrusion to which the plaintiff did not consent, and for which the defendants fail to offer a lawful justification. Accordingly, I will grant the plaintiff's motion for a Temporary Restraining Order.

An appropriate Order follows.